The case of the afternoon, United States v. Phillips. Good afternoon. Please support Raymond Radulski on behalf of the appellate Christopher Phillips. I'd like to reserve two minutes for rebuttal, and I've asked the choir to do so. The question before the court is the reasonableness of a 20-year prison sentence for a single distribution of child pornography by a person having no criminal history. Mr. Radulski? Yes, Your Honor. While it's true that there's no presumption that the district court can indulge in that the guidelines are reasonable, doesn't Gall and Rita before it say that at the appellate level we can look at a sentence that's within the guidelines and presume that the district court imposed a reasonable sentence? I would disagree, Your Honor, with that reading of those cases. They seem to say that it's more likely than not that a guideline sentence might be reasonable, but there's no presumption that automatically applies. Well, I didn't say automatically. Let me read you the exact language. If the sentence is within the guideline range, the appellate court may, but is not required, to apply a presumption of reasonableness. That's from Gall. It says what it says, but at this point, that's a presumption that can attach to a within-guidelines sentence, correct? Well, again, I don't necessarily think the court was leaning in that direction. I think the court basically, from some of the other cases, indicated that that's a good starting point. It might be reasonable, but we're going to look at the explanation that the sentencing court gives for a particular sentence and work from there and determine whether or not the sentencing factors are adequately addressed by the sentence. What's your real problem with what the district court did here? I mean, you have a sentence. You say it's a first-time offender. Well, the guidelines take that into account, and this sentence was within the guidelines. So what's your real problem? Why would we say the district court, she got it wrong? The real problem is there's absolutely no explanation for five years versus 20 in this particular case. Five years versus 20? Five years was the mandatory minimum under the statute. Although 60 months was well below the lowest end of the guideline range. Indeed, it was. In fact, the guidelines were two to seven years, as initially calculated, were two to seven years in excess of the statutory maximum. Again, for a first offender, it basically puts a first offender in the same position as someone who makes a living doing this and is a criminal history Category 6. If we're going to say a first offender deserves 20 years under these circumstances, what do we give the professional pornographer with a criminal history Category 6 for a similar offense? Our real problem was the judge's explanation or lack of explanation for giving an identical sentence that she gave to Mr. Thielman. There were multiple differences between the two. The defendant, or Mr. Phillips, was abused. The judge even accepted that and believed it. Thielman, the judge concluded, was not similarly abused. Thielman was the instigator. He had to entreat the defendant numerous times to perform the offense conduct. Thielman basically operated the ring where he got other people involved in this. The judge even cited that as a reason for giving Thielman 240 months and then turned around and said, well, there's no difference vis-a-vis this particular conduct between you and Mr. Thielman, so I'm going to give you 240 months as well. Yeah, she actually did look at it. When she looked at it, she apparently came to the conclusion that for reasons that are unique to your case, and in particular she emphasized that you victimized somebody who was under your control and custody, your own daughter, that that was a factor that evidently weighed on her heavily in making a decision. What is it about our role as appellate judges that would prompt us in light of Gaul to say that's a wrong assessment? You can't look at that and say that's bad enough to warrant a within-guidelines sentence. I would suggest, Your Honor, that this court's role is essentially almost out of a last resort, if you will. Everyone is upset about child pornography. I don't think you can find anyone who would say, hey, this is a good thing, it should be promoted, and you'd be hard-pressed to find somebody who would. However, we have to basically step back, if you will, from the offensive conduct in this case and do an analysis and basically say, look, was a 20-year sentence appropriate for the offense in question? We would submit it was clearly excessive. It was beyond what's required under the factors. Then don't you have to make the argument that not just Judge Robinson is wrong, but the Sentencing Commission in the United States Congress is wrong? Judge Robinson seemed to suggest that in some of the comments that she made in her opinion. She basically said, I certainly believe that there should be a legislative or a higher court adjustment in the sentencing guidelines in this case, but I decline to do that here. Even if she's in your camp on that, I guess if your argument is that the sentences are out of line with what they ought to be, is that a problem with her sentencing or is that a problem that your client has with harsh sentences for child pornographers? I don't necessarily think that. I would submit that there probably are child pornographers who engage in similar conduct who would be well-deserving of a 20-year sentence. When you take a first offender, I'm not even aware that this man was ever arrested for anything, and he goes from zero to a statutory maximum sentence, I think there has to be some reasonable explanation offered by the trial judge for putting him there. Not just to say, well, it takes two to tango. You and Thielman both engaged in this web transmission. I can't see any reason why you shouldn't receive the same punishment. The problem is that the trial judge focused on their characteristics vis-a-vis the offense conduct as opposed to taking a look at the big picture and assessing whether or not my client was worthy of a similar sentence or deserving of a similar sentence. The problem is under the guidelines you start at a 32 for the initial violation. Then you add four for the age of the child. You add two for the touching and sexual contact. You add two for the fact that it was his child. And then two for distribution. But, I mean, the aspects that apply to him strictly and not to Thielman get him 10 points and get him up to a 42 before the acceptance of responsibility. So, I mean, there's a distinction between Thielman and him in terms of what he did. Well, I think the bigger distinction between, I mean, he obviously engaged in one horrific act. Okay? Probably the worst set of circumstances combined. But when you put it in the scheme of things, it was a single transmission. They didn't find any other evidence of any child pornography on the defendant's computer. He immediately repudiated the action, said he'd never do it again. In the three or four months between the time that this offense occurred and the time he was arrested, he engaged in no other offense conduct, in contrast to Thielman, who continued with his solicitation of other people through the Internet during the entire period of time. Yeah, but the March, the May, I mean, they're talking about the niece and the daughter. I mean, it's not just, oh, my God, an errant 18 minutes in his life. Well, it led up to this. He had a relationship with Thielman. Thielman kept intriguing him, look, do this, do that, and so forth. And the defendant in this particular case had a psychological vulnerability, given his background reported by Dr. Turner, confirmed by the defendant's own sister, that he suffered at six or seven years of age systematic forced sexual abuse at the hands of his stepfather and physical and emotional abuse at the hands of his mother. It basically put him in a position where he was an extremely vulnerable individual, seeking to please people almost at any cost just to maintain a relationship with the person. Were you there at the sentencing? Beg your pardon? Were you at the council at the sentencing? Yes, I was. Yes, I was. Obviously, you would think that, and there was, the attempt to show that this person is far less culpable than Thielman, but it looks like the court didn't buy it. Now, the one thing that you're quoting is, I certainly believe that there should be a legislative or a higher court than something Roman I or adjustment in the sentencing guidelines in this case, but I declined to do that here. So are you saying that she was just substantively unreasonable in the 20 years, because when you compare this with Thielman, how does one get 20 and the other get 20? We believe she was procedurally and substantively deficient in her sentence, procedurally from the perspective that she didn't give an adequate explanation for why Prisner or Phillips belonged in the same boat with Thielman as far as the sentence was concerned. You say in the same boat. It maxed out under the statute, which is. Now, isn't that a function of where they set the maximum? I mean, suppose the judge thought, I'd like to give Thielman 40 years, but I can't. I've got to give him 20. That's the most I can give him. I mean, from one perspective, you could say the punishments are too harsh, and because of that, they crowd up against each other. I suppose as a logical matter, whether you buy it or not, you could say it comes from the other direction, too. In one sense, they're too lenient, so you have a crowding together of sentences where it's perhaps more difficult to distinguish than some people might like. But the fact that she's operating with a statutory maximum with respect to Thielman, why should that in and of itself make her determination that your client deserved the maximum sort of per se unreasonable in light of what Thielman got? Well, because she explained why she sentenced Thielman to the maximum one week before. She says, I'm giving you this sentence not just because of the offense conduct, which was the webcam transmission with my client, but because you brought all these other people into this. This was your thing. And she said to your client, in effect, you're getting this sentence because you were, in effect, molesting your daughter for the pleasure of other people. That's not something that she could look at and say that's deserving of a max? I don't believe it can. When you look at the offense we're talking about in the realm of other offenses that could have occurred, I mean, the actual sexual contact, if it in fact had occurred, would have merited at most two years under Delaware's unlawful sexual contact statute. Six months would be the presumptive sentence if he had indeed had sexual contact. That's an argument with the statute, though, right? That's not an argument with what she did with the statute. I think it argues to the reasonableness of what the judge did. I mean, I don't think we have judges. Their job is to take whatever the guidelines are and say, okay, this is my starting point. Let's look at this case and see why a guideline sentence should not apply. I think in our case, the reason that the judge granted our one objection to the distribution enhancement was to bring the sentence down to a guideline range and then take comfort in sentencing within the guidelines. I mean, I basically think that's the biggest problem that the sentencing judge had, is to try to stay within that safe harbor, so to speak, simply because, let's face it, there is some uncertainty as to whether or not a sentence outside the guidelines is going to be received properly. And I think there's a natural hesitation and comfort for a sentencing court to stay within the guidelines, which that's why we have courts that review reasonableness. Here's some language from Rita that might explain why people think that way. It says when both the sentencing judge and the sentencing commission have reached the same conclusion as to the proper sentence, that double determination significantly increased the likelihood that the sentence is a reasonable one. That's the circumstance we have here, right? The sentencing guidelines call for a sentence within this range. The district judge looks at it and says, I think it calls for a sentence within that range. Rita says that double determination significantly increases the likelihood that the sentence is a reasonable one. What do you rely on as legal authority, if anything, to tell us that she's outside that zone of reasonableness? The legal authority is the fact that you've got a guideline calculation that's two to seven years in excess of the statutory maximum. I'm not sure exactly how the guidelines were arrived at for this particular offense, but if you're starting at two to seven years beyond the statutory maximum, something's wrong, particularly for a first offender. May it please the Court, my name is Edmund Falgowski. I'm an assistant United States attorney from the District of Delaware. I represent the appellate of the United States of America. Essentially, in his brief, the appellant argued that the district court failed to consider the 3553 factors and then felt compelled to issue a sentence. In 3553A6, the court did say that she had to take a look at how she sentenced the other co-defendants in this case, but shouldn't she really be looking at how you sentence other defendants nationwide? That's part of the mix. Isn't that what she should have done? She said, and I quote, I have to look at the way I sentence everyone else in connection with their conduct vis-à-vis the sentencing guidelines. It was pretty clear that she was referring to the other co-defendants in this case. Yes. But isn't that incorrect? You're supposed to take a look at how you sentence, what the sentencing guidelines call for nationwide sentencing of those who have the same type of conduct. Yes, but Osborne, this court's decision in Osborne, indicates that it's also a proper consideration for the court to examine the sentences within a district itself. Our Jackson case says you look to the nationwide, not to the particular co-defendants. That's correct. What happens is it's flipped around. The defendant says, well, wait a minute. I got something remarkably higher than my co-defendants. And what we said in Jackson is you have to look at what you do nationwide. Why don't you do the same thing here? Well, the defense didn't place any cases in front of the court to argue that. No, but isn't it up to her to take a look at what you do nationwide? In other words, and it may support you. Right. I mean, I've taken a look at it. I mean, there is some support if you take a look at the nationwide statistics. Yes, they did not become part of the record at sentencing. The government, the defense did not bring that to the court's attention. But I believe the cases also indicate that the court must not, at sentencing, touch on every single one of the factors. If one of the sentencing factors in 3553A is not brought to the court's attention, the court doesn't have to address it. No, the court's obligated as you run through the 3553A factors. Yes. Were you also the prosecutor in the Thielman case? Yes, Your Honor. How many people did he lure into this web of whatever you might call it? Thielman, the Chief Judge Robinson said it was a ring. And she said, well, it really wasn't a ring. How many people? There were eight other people similarly searched. Over what period of time? Over a period of about a year. Okay. How is it that she can say, I truly don't have any reason basis to determine which conduct, yours or that of Mr. Thielman's, is the worst. And, therefore, while I recognize there are individual factors that weigh in your favor, I cannot sentence you to anything less than that of Mr. Thielman, which is the statutory maximum. How does she get there? Well, because, Your Honor, out of the nine individuals that were indicted on the same day, part of this ring, Thielman is essentially a hub. And he was talking to eight other people. Right. He's the ringleader. Well, he was talking to the eight other people. The eight other people didn't necessarily know one another. Right. But how do you single out one of them and say, yours is worse. He clearly was getting all these other people involved in criminal activity, some of them not, well, to look at Phillips, he was somewhat reluctant, but then again not. How could she say, I cannot sentence you to anything less than Mr. Thielman's? Because the difference in Phillips and the other eight was that there was only one episode of production. There was only one episode where the child pornography, which was distributed, was created, was produced by the defendants. The other seven people. Was this that example? I'm sorry. Was this that example of something being produced for distribution? This was produced for distribution, yes. This videotape. No, this webcam is no longer available. It never went out. But it was produced for distribution to Thielman. To Thielman, right. That was a transmission on a webcam. Right, yes. So there was a distribution. It wasn't a permanent record that was put out for sale or distribution to others, was it? It doesn't have to be a permanent record. It's got to be a recording, and it was recorded on one camera, one webcam, and it was transmitted to the next. But what Ferber said in 1982 when it talked about this was that one of the real problems with this is that you have a permanent recording, that it's a permanent statement for the victim of the crime. Yes, but there's no argument, and it hasn't been appealed, that this is not production for the purposes of the production guideline, 2G 2.1. In other words, the defendant never argued in the district court that this is not a matter of production, which should be. Was the plea to production or was it a plea or transmission? What was the action? The plea was to the distribution of child pornography. No, no, he didn't say distribution. I thought it was production. The plea, the guilty plea, the original charge to Phillips was to production. Phillips pled guilty to distribution, and in the plea agreement, we specified what the circumstances. He pled guilty to distribution? Are you sure about that? Transmission or distribution? Transmission is what I thought. Yes, transmission. Causing, transporting, permitting, or offering, or seeking. Doesn't that require just a sexually explicit conduct? It requires a sexually explicit conduct, yes. Causing, transporting, permitting, or offering, or seeking by notice of an advertiser, a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct. And that conviction isn't being contested, right? We're talking about sentencing, not the conviction, correct? That's correct, Judge. But if you have a crime that something doesn't fit, you can come back later on, could you not, on habeas or whatever? For example, here, sexually explicit conduct involves lascivious exhibition of the pubic area or genitals. Did that happen here? No, that was simulated sex acts. Okay. The simulated masturbation, actual or simulated masturbation of the child. And in this case, Judge Robinson found that sentencing, she found that there was a two-point upper adjustment in the offense level for sexual conduct. The defendant had argued and had challenged that two-point adjustment, saying that the sex act was simulated. And Judge Robinson found, as a matter of fact, that sentencing, that it was not simulated, that it was actual. And she denied the defendant's request to remove those two points from the offense level. Accordingly, it was the defendant's actual sex contact with the victim that constituted the child pornography. Can I get back to what the other people, this issue of I can't sentence you to anything less than Mr. Thielman? Yes. The other seven defendants, the other seven individuals, they were receiving child pornography from Thielman. Thielman had child pornography on his computer. He would send them images. He would send them child pornography. That child pornography was child pornography that had existed on the Internet and had been downloaded to his computer. All right. So it was not a similar situation. Yes. What were the other sentences? The other sentences, there were five that were within the guidelines. There were two that were below the guidelines. The sentences were one individual for distribution of child pornography that he had on his computer, received 12 1⁄2 years. There was an individual that pled guilty to receiving child pornography. He got five years. The lowest of the individuals was a person who was looking at 30 under the guidelines, and he got 22 for possession. One of the possessions was looking at 37 at the low end and received 30. In this case, Thielman was charged as a co-conspirator originally with the production of child pornography and charged with the production and that he aided and abetted. And so I believe that ultimately what the court was faced with is that when the court said that there was no reason, the court could find no reason to basis to determine whose conduct was worse, the judge indicated that while there were mitigating circumstances, personal circumstances for the defendant, that the child was in his control. The defense counsel indicated at sentencing that the child was betrayed by the defendant. The defense counsel would indicate that this offense was too great or the penalty was too great, and yet the appellant's attorney characterizes himself the crime as horrific. Judge Robinson indicated the offense was despicable at sentencing. The defendant said there's no gilding the lily here. This was just an awful offense. Those words speak volumes about the nature of the offense and why a sentence at the statutory maximum was appropriate. Based on your understanding, how does one go about the sliding scale of 5 to 20 years roughly? What gets you 15, what gets you 10, what gets you only 5? Well, I think what happens, Your Honor, is that first the court obviously goes through the guideline calculations, and in this instance the guideline calculations indicated that among the salient factors the court would look at, the specific offense characteristics is was the person a custodian of the child? In other words, if you're a parent, you are the last line of defense. Well, that gets you 10 extra points. It goes from 22 to 32 if you're the parent, right? And the age of the child, because the younger the child, I think it's obvious that the less the child can defend for themselves and is more trusting of a person who is the custodian. And then whether or not there was a sex contact. I mean, there could have been a lascivious exhibition of the genitals in this case. I mean, this could have been an episode where a person took a picture of a child who was getting out of a bathtub and the child didn't even know the child was being victimized. But that doesn't appear to have been here. You're saying that what the judge found was there was that actual touching? The judge found the actual touching. The transcript, the... We're not sure from the transcript. I wasn't sure from the transcript whether there was actual touching or not. There is. The judge found that there was actual touching. I mean, clearly the judge did find it. Yes. And so the judge starts with that. And then, indeed, there was a distribution in this case. In the production guideline, it's not automatic that a person gets a two-point increase. The distribution was to whom? In this instance, the distribution by Phillips was to Tillman. But with a webcam, it's almost like Tillman's in the room, isn't it? It is. And I believe part of the problems that Congress is having, that Congress has in these statutes and in the realm of child pornography, is that prior to the age of the Internet, this could not happen. And now something like this can happen. If there was no Internet, this episode may not indeed have occurred. The defense indicates that given the defendant's condition, he indicates that he was likely to be susceptible to influence because of his condition. But in this case, the defendant three times refused and rejected the overtures of Tillman that he do this. It wasn't until the fourth time when the defendant was said, he says, I'll give you $100 if you do this for me. I'll do whatever you say if you do this for me. The defendant only then did he, in fact, do this. Let me go back to Judge Mandel's question. Tillman sounds like the bad actor. He was the ringleader here. And he gets 20 years, a person who does one thing once being asked for the fourth time, the first three times saying no, also gets 20 years. How do you explain that? Well, as to a ringleader, I don't think, Judge Robinson indicated there really wasn't a ring here. What Tillman had done, he had distributed child porn. But the child porn that Tillman distributed. Yeah, I don't mean, I mean in the sense that everything revolved around him, it seemed like. He's not the worst, I don't believe. And I believe Judge Robinson indicated that her agreement in that regard, I submit that he's not the worst. Judge Robinson said that, she didn't say there was no difference between the two of them. She didn't say one was worse than the other. She indicated that she could find no reason to basis to determine whose conduct was worse. I mean Tillman, he was talking to other people and he was distributing child porn to other persons. But Judge Robinson indicated when she sentenced Tillman, when she sentenced the defendant, Phillips, she indicated that she has to keep in mind that this was, that it was Phillips that had control of the child. And that this was not an unknown child who was being exploited because the child's pictures were being distributed across the Internet. That essentially was what Tillman was doing. He was taking the images of persons unknown to him and he was promulgating that exploitation by distributing those across the Internet. And he wasn't creating them, right? I mean the defendant here was in real time creating the pornography that was being distributed. Yes. And with his own daughter. Yes. And that is the crux of the matter. And that's what makes this despicable. That's what makes it horrific. That's what makes it appalling. And those are all words that have been used in the record below. That's what makes the maximum sentence substantively reasonable under the circumstances. Thank you. Unless the court has any further questions. Thank you. Mr. Austin. I would submit that it's no less despicable if he did the same thing with a stranger's child. Indeed, the enhancements that applied to bring Mr. Phillips to a guideline range of two to seven years in excess of the statutory maximum were accounted for. But the guidelines disagree with you, Mr. Radulski. The guidelines say it is worse if it's your own child. If you are a custodial adult, that is substantively – I mean it's not that molesting strangers is a good thing. It's real, real bad too. But the guidelines seem to say pretty directly it's worse if you're standing in the role of a parent and you take advantage of that position to do the bad act. I appreciate that. And it does – and, in fact, it is one of the factors that put you in the guideline range that resulted in this case. However, let's look at it from another way, perhaps a graphic way. What if he had literally raped a child in this video transmission? What are you going to give him? More than 20 years? No, he gets 20 years for that. And that basically is the sliding scale we have to deal with, the explanation for five versus 20. What if the child – what if he had killed the child under Delaware law and it was through abuse or neglect? He's looking at two to 25 years. Let me ask you the same question I asked Mr. Fikowski. What would be your sliding scale then as to when you go from five to 10 to 15 to 20? I think the sliding scale is to basically look at this, step back from the frenzy of child pornography, which is admittedly a horrible thing. Step back at it and take an objective look. Does this crime merit 20 years in jail or does it merit five years in jail, which is a long time. First guideline sentence I handled in 1988, bank robber received 48 months. One of the court bailiffs says, man, that's a long time. Yeah, five years is a long time in jail. I think under the guidelines we've gotten a bit calloused about what's a long time in jail. Wasn't at one point this was six years and then it went to 12 years and then it went to 20 years? It may very well have. It may very well have. I have no doubt about this, Your Honor, that these offenses are taken very, very seriously. But I think – But Judge Gordon's point is there's a decision that's been made that this admittedly horrific thing, which everybody agrees, can get you up to a maximum of 20 years. I don't think that's so much your argument. Your argument is he didn't deserve 20 years here, but why? If you look at his particular situation, it, I think, takes him out of the threshold of 20-year sentences. An individual who was abused the way he was from five or six years of age, who developed this dependent personality, who was psychologically – I think the psychology is that he was destroyed, not just damaged – made him susceptible to people like Thielman. People like Thielman, they prey on their victims and they prey on the people that they solicit for these types of things. They know who to approach, who is going to be responsive to their overtures. That's what makes Christopher Phillips different. He, to some extent, is a victim himself in the sense that he had been victimized as a child. He doesn't even know the connection between him being victimized and him taking, basically, the attitude he took later to have his natural reluctance to do something is overcome by something. Although he's on tape or on the transcript, as having said, when he was resisting initial overtures, I like my freedom. Sure, absolutely. I mean, no doubt about it, but he did resist it, and as soon as he did it, he repudiated it, and there's no evidence that he ever did it again. Thank you. Thank you very much. The case is well argued. We'll take it under advisement.